Robert M. SCHILLING, Appellee,

v.

**IOWA DEPARTMENT OF TRANSPORTATION,
Appellant.**

No. 00–0815.

Supreme Court of Iowa.

June 12, 2002.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Mark A. Hunacek, Assistant Attorney General, for appellant.

Joseph J. Bitter of Bitter Law Offices, Dubuque, for appellee.

LARSON, Justice.

The Iowa Department of Transportation (DOT) appealed from a district court order vacating its revocation of Robert Schilling's driver's license. The court of appeals affirmed, and we granted further review. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand.

## I. *Facts and Prior Proceedings.*

Robert Schilling pled guilty to eluding a law enforcement vehicle in violation of Iowa Code section 321.279 (1999). The district court accepted the plea, and on February 28, 2000, the court entered an order granting Schilling a deferred judgment. On March 23, the DOT sent Schilling a notice under Iowa Code section 321.209 that, as of thirty days from the notice, his driver's license would be revoked for one year, based on his eluding conviction. On April 14, 2000, Schilling petitioned for judicial review, contending a deferred judgment did not constitute a "final" conviction, as required by Iowa Code section 321.209. The district court agreed and ruled the DOT was without authority to revoke his license. The DOT appealed, and the court of appeals affirmed. We granted the DOT's application for further review.

## II. *The Applicable Statutes.*

A. *The revocation statute.* Iowa Code section 321.209 provides:

The department, upon thirty days' notice and without preliminary hearing, shall revoke the license or operating privilege of an operator upon receiving a record of the operator's conviction for any of the following offenses, when such conviction has become final:

. . . .

7. Eluding or attempting to elude a law enforcement vehicle as provided in section 321.279.

The critical language is "when such conviction has become final." This case turns on whether Schilling's deferred judgment is a final conviction.

B. *The deferred-judgment statute.* Iowa Code section 907.1 defines deferred judgments and deferred sentences:

As used in this chapter, unless the context otherwise requires:

1. *"Deferred judgment"* means a sentencing option whereby both the adjudication of guilt and the imposition of

a sentence are deferred by the court. The court retains the power to pronounce judgment and impose sentence subject to the defendant's compliance with conditions set by the court as a requirement of the deferred judgment.

## III. *Disposition.*

An Ohio case explains the meaning of the terminology used in these cases:

The ordinary meaning of the word "offense" is "the doing that which a penal law forbids to be done or omitting to do what it commands." On the other hand, a "conviction" is "that legal proceeding which ascertains the guilt of the party upon which the sentence or judgment is founded." In other words, a conviction is a legal ascertainment that an offense has been committed. A conviction is not an essential element of an offense, although an offense is always a prerequisite to a conviction.

*State v. Brantley,* 1 Ohio St.2d 139, 205 N.E.2d 391, 393 (Ohio 1965) (quoting Bouvier's Law Dictionary (Baldwin's Century ed.1940)).

Schilling argues a deferred judgment is not a final judgment or final conviction, citing *State v. Anderson,* 246 N.W.2d 277, 279 (Iowa 1976) (deferred judgment cannot be appealed, as it is not a final judgment), and *State v. Stessman,* 460 N.W.2d 461, 462 (Iowa 1990) (same). The word "conviction" is subject to various interpretations. *See, e.g., State v. Brodene,* 493 N.W.2d 793, 796 (Iowa 1992).

"[T]echnically the word means the final consummation of the prosecution against the accused including the judgment or sentence rendered pursuant to an ascertainment of his guilt.

In its general and popular sense and frequently in its ordinary legal sense, the word 'conviction' is used in the sense of establishment of guilt prior to and independently of judgment and sentence by a verdict of guilty or a plea of guilty."

*State v. Kluesner,* 389 N.W.2d 370, 372 (Iowa 1986) (quoting *State v. Hanna,* 179 N.W.2d 503, 507–08 (Iowa 1970)). In *Maguire v. Fulton,* 179 N.W.2d 508 (Iowa 1970), we said:

The term "final conviction" cannot be given a hard and fast definition. Where that term or such a term as used in section 321.209 is found in a statute, its meaning depends upon the intention of the legislature. . . . It may be final for one purpose and not for another.

". . . [F]inality depends somewhat on the purpose for which, and the standpoint from which, the judgment is being considered, and it may be final for one purpose and not for another."

*Maguire,* 179 N.W.2d at 511 (quoting 49 C.J.S. *Judgments* § 11, at 35 (1947)); *see also Brodene,* 493 N.W.2d at 796 ( [M]any of the authorities considering the meaning of "conviction" view it as a question of legislative intent.").

We have distinguished between a conviction used to increase a criminal penalty and one used to protect the public.

While we have construed the word "conviction" to have a relatively narrow and technical meaning where it appears in statutes used to enhance punishment, we have accepted a broader definition when protection of the public has been at stake.

*Kluesner,* 389 N.W.2d at 372. Federal cases agree. *See, e.g., United States v. Samson,* 533 F.2d 721, 722 (1st Cir.1976) (applying broad definition of conviction because "the consequences of the deprivation are relatively slight compared with the gravity of the public interest sought to be protected").

The DOT argues that revocations under section 321.209(7) are aimed at protecting

the public from drivers who have demonstrated a threat to public safety by attempting to elude a law enforcement vehicle. It cites analogous cases such as *State v. Blood,* 360 N.W.2d 820 (1985), in which we held the purpose of an OWI revocation statute was

> to protect the public by providing that drivers who have demonstrated a pattern of driving while intoxicated be removed from the highways. The peril created by a repeated violator is not lessened by the fact that one of the violations resulted in a deferred judgment.

*Id.* at 822; *see also State v. Vogel,* 548 N.W.2d 584, 586–87 (Iowa 1996) (license-revocation procedures in the implied-consent statute are remedial); *State v. Moret,* 486 N.W.2d 589, 591 (Iowa 1992) (license suspension of habitual offender is for public safety, not for punishment).

The DOT contends the cases relied on by Schilling are distinguishable. For example, *Iowa Beer & Liquor Control Department v. McBlain,* 263 N.W.2d 226, 226–27 (Iowa 1977), held a deferred judgment was not a conviction for purposes of a liquor license suspension; that case, however, did not involve a suspension for the protection of the public. *See Kluesner,* 389 N.W.2d at 372. *Anderson,* another case relied on by Schilling, is also distinguishable. *Anderson* merely held that a defendant cannot appeal a deferred judgment because there is no final *judgment;* that case did not consider whether a deferred judgment was a final *conviction.* 246 N.W.2d at 277.

■ Schilling argues that "[a] deferred judgment is not a final judgment," and that is so, but the statute does not require a final *judgment*—only a final *conviction.* There is clearly a difference. *See Brodene,* 493 N.W.2d at 796–97 (holding accepted plea of guilty is a conviction, even

without the entry of a judgment or sentencing). Schilling argues that if the DOT "feel[s] that the entry of a guilty plea is the act which triggers [its] right to revoke, [then] [w]hy not the mere filing of a charge?" We reject this argument; the statute requires more than a mere charge, but less than a final judgment. Iowa Code section 321.209 requires more than a plea of guilty, and it requires more than a conviction. It requires a conviction that "has become final."

We have found no other Iowa statute referring to a "final conviction." However, federal cases have required the finality of convictions in immigration and naturalization cases, and we find those cases to be instructive. Under federal law, aliens "convicted" of a felony may not be granted permanent residence. 8 U.S.C. § 1255a(b)(1)(C)(ii). Federal courts have applied this rule in immigration cases involving deferred judgments and equivalent procedures. *See, e.g., White v. INS,* 17 F.3d 475 (1st Cir.1994) (Massachusetts charge "filed" without determination of guilt); *Yanez–Popp v. INS,* 998 F.2d 231 (4th Cir.1993) (Maryland "probation before judgment").

These cases have adopted a test first formulated by the Board of Immigration Appeals (BIA) for determining whether a "conviction" has been established. *See White,* 17 F.3d at 479 (citing *In re Ozkok,* 19 I. & N. Dec. 546 (BIA 1988); *Yanez–Popp,* 998 F.2d at 234 (same).

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;
>
> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed . . . ; and

(3) a judgment of adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge. *Ozkok,* 19 I. & N. Dec. at 551–52.

Schilling does not argue he has not been convicted; he argues only that any conviction has not become final. Finality is also a significant factor in immigration cases. As the court in *White* stated, "Superimposed on the BIA's three-part test is an additional requirement: the 'conviction' must have attained a sufficient degree of finality." *Id.* at 479 (citing *Pino v. Landon,* 349 U.S. 901, 901, 75 S.Ct. 576, 576, 99 L.Ed. 1239, 1239 (1955)). Under *White's* analysis, a conviction becomes final "if direct appellate review of the conviction has either been exhausted or waived." 17 F.3d at 479.

■ We believe a similar test is appropriate in this case. The first question is whether the license revocation is aimed at the protection of the public or as a punishment measure. If it is the former, a conviction without judgment may be a sufficient basis for revocation. *See Kluesner,* 389 N.W.2d at 372. If the revocation statute is protective in nature, the establishment of the following elements will be sufficient to show that a conviction exists: (1) A judge or jury has found the defendant guilty, or the defendant has entered a plea of guilty; (2) the court has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed; (3) a judgment of guilty may be entered if the person violates the terms of

probation or fails to comply with the requirements of the court's order; and (4) the conviction has become final. A conviction is final if the defendant has exhausted or waived any postorder challenge.

■ We believe section 321.209(7) is designed for the protection of the public, not for punishment. Therefore, a broad definition of "conviction" is appropriate. *See Kluesner,* 389 N.W.2d at 372. Applying the test for conviction as set out above, it is undisputed that Schilling pled guilty, thereby satisfying the first element. As to the second element, the court imposed a restraint on Schilling's liberty by requiring him to abide by the terms of his deferred judgment agreement, report any violations of law, attend a defensive-driving school, appear in court on a set date to show cause why his probation should not be revoked, and pay the court costs. As to the third element, under the deferred judgment order and Iowa Code section 907.1, a judgment of guilt or order of contempt may be entered if Schilling violates the terms of his probation. Under the fourth element, finality, it is clear Schilling's conviction has become final because he is not entitled to appeal the order; there is no judgment from which to appeal. *Anderson,* 246 N.W.2d at 279.[1]

We conclude that the deferred judgment constitutes a conviction, and the conviction became final prior to Schilling's challenge in district court. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for dismissal of the judicial-review petition.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF**

---

1. It has been suggested that a remedy in certiorari might be available to challenge a deferred judgment order in the discretion of the court. *See McKeever v. Gerard,* 368 N.W.2d 116, 119–21 (Iowa 1985) (Carter, J., dissenting). In any event, certiorari is not available here because Schilling did not challenge the court's order within the 30 days provided by Iowa Rule of Civil Procedure 1.1402(3).

DISTRICT COURT REVERSED; CASE REMANDED.