# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1558
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Covey Dale Truax, also known as Christopher Dale Sinchak

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: December 16, 2022
Filed: April 4, 2023

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Christopher Truax of attempted enticement of a minor using the internet, in violation of 18 U.S.C. § 2422(b). Truax appeals, asserting three claims: the district court[1] (1) abused its discretion when it allowed the prosecution

_____

[1] The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

to impeach him using evidence not disclosed prior to trial; (2) committed plain error when it allowed the prosecutor to attack his credibility during rebuttal closing argument; and (3) imposed a substantively unreasonable sentence. We affirm.

## I. BACKGROUND

During the summer of 2020, law enforcement conducted an undercover operation targeting child exploitation during an annual motorcycle rally held in Sturgis, South Dakota. As part of the operation, Rapid City Police Detective Elliott Harding posed as "Cassie Mae" on Tinder, an internet dating app. The profile created by Detective Harding described Cassie Mae as 19 years old. On August 11, 2020, Truax messaged Cassie Mae through Tinder, and the pair eventually moved their discussion to text messages outside the app. Between August 11 and August 13, Cassie Mae and Truax shared a series of photographs and messages, including a message in which Cassie Mae informed Truax that she was 13 years old and had misrepresented her age on her Tinder profile. Truax told Cassie Mae that he was "okay with [her] age."

Ultimately, Truax agreed to pick Cassie Mae up at a middle school, describing in detail the sexual contact he intended to have with her. When Truax arrived in the vicinity of the school on August 13 at the agreed upon time, he was arrested. A search of Truax's van revealed a handgun, items used during sexual activity, and Truax's cell phone containing the messages he exchanged with Cassie Mae. Truax later explained to the officers that he lived in his van.

Truax was indicted on two charges: (1) attempted enticement of a minor using the internet, in violation of 18 U.S.C. § 2422(b); and (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The case proceeded to a jury trial on the enticement count and Truax chose to testify. Truax testified that he was depressed and suicidal at the time of his arrest, that he knew officers conducted an annual undercover operation during Rally Week, and that he believed Cassie Mae was an undercover agent when he texted her. He asserted that

his conversations with the agent were intended to set up a suicide by cop. During direct examination, defense counsel observed Truax having a "physical reaction." Following a short break, defense counsel sought and was granted an overnight recess to determine whether Truax could continue testifying.

Truax's testimony resumed the following day. On cross examination, the prosecutor asked Truax whether he remembered a jail phone call with his aunt on October 2, 2021, which was approximately one month prior to trial. The defense objected and a discussion was held at sidebar. The defense claimed surprise, asserting the prosecution had failed to disclose any phone calls during discovery. In response, the prosecutor explained the evidence had been disclosed that morning because she had only learned of the phone call the night before when an officer told her that Truax had a phone conversation with his aunt asking for three books. The books included *Win Your Case: How to Present, Persuade, and Prevail-Every Place, Every Time* by Gerry Spence (the "Spence Book"). The prosecutor indicated that jail records showed the Spence Book was received by Truax on October 11.

The prosecution concluded the Spence Book was appropriate for impeachment because it taught that to prevail at trial, a defendant must make himself vulnerable, talk about his fears, and generally use theatrics to persuade the jurors. The prosecutor argued the book was relevant because she believed Truax was following the strategies outlined in the book. The district court ruled that using limited excerpts from the Spence Book was appropriate for impeachment if Truax had received and read the book. No questioning was allowed on the phone call. When cross examination resumed, Truax admitted receiving and reading the Spence Book, testifying that he had read it "cover to cover," including the chapter about preparing for cross examination. The prosecutor recounted excerpts from the book, some of which Truax recalled and some of which he did not.

Truax's claim that he arrived at the meeting location planning to commit suicide by cop was called into question by Special Agent Brent Gromer's testimony. Agent Gromer testified that Truax's claim of suicidal intention was inconsistent with

his behavior at the time of arrest. Agent Gromer believed that Truax's driving behavior suggested he was engaging in "counter surveillance" to determine whether any police were present at the scene before parking his van. In addition, at the time of arrest, Truax asked law enforcement not to point a firearm at him.

During closing argument, the prosecutor discounted Truax's claim that he had a suicidal intention when he drove to meet Cassie Mae. The prosecutor argued the only evidence of depression was from Truax's own testimony, and Truax's actions at the scene did not demonstrate a person who intended to commit suicide by cop. The prosecutor asked the jury to consider each witness's motive for testifying and whether Truax's testimony was "theatrics." On rebuttal, the prosecutor stated, "[O]n the stand, having been coached by Gerry Spence, [Truax] knew exactly how to try to play on your emotions. Voice fear. Cry. Show them your heart. It's a pounding heart. Ladies and gentlemen, that was a show. That wasn't fact. That was theatrics to play on your emotions."

The jury found Truax guilty. At sentencing, the district court calculated an adjusted Sentencing Guidelines range of 135 to 168 months. After considering the 18 U.S.C. § 3553(a) factors and noting that Truax had a prior conviction for a sex offense involving a child—which suggested a risk of recidivism—and Truax's "roving van" lifestyle that would complicate supervised release, the district court imposed a 168-month term of imprisonment and lifetime supervision.

## II.    ANALYSIS

Truax asserts, over his objections at trial, the district court erred by allowing the government to use the Spence Book to impeach him because it was not timely disclosed during discovery. We review a decision declining to exclude evidence for a violation of Rule 16 of the Federal Rules of Criminal Procedure for abuse of discretion, and the court's subsidiary factual findings for clear error. United States v. Crumble, 965 F.3d 642, 646 (8th Cir. 2020).

-4-

While the parties spend much time arguing the parameters of Rule 16(a), that issue is immaterial. At no point did the district court receive any recorded statement of the defendant. The only testimony in the record is that Truax was asked if he had a phone conversation with his aunt on October 2, 2021. Truax stated he had no specific recollection of the call, at which time the defense objected. While the government inquired about the phone call, neither it nor its contents were ever presented to the jury. No statement by Truax was ever elicited or even sought to be elicited. Rather, the contentious issue involves a failure to disclose, before trial, the Spence Book and whether it was appropriate for impeachment purposes. Here, the government only became aware of the Spence Book the evening before its disclosure when an officer told the prosecutor that Truax had received a copy of it while in jail awaiting trial. Because the Spence Book was in the possession and knowledge of Truax, the government was under no burden to produce it—it already being in Truax's personal possession.

The district court's ruling prohibited any further discussion about recorded phone calls but allowed cross examination on the Spence Book if the prosecution established Truax had received the book and read it. After the proper foundation was laid, the examination, with excerpts from the Spence Book, was appropriate for use as impeachment. But, even if the Spence Book had not been in Truax's possession, the prosecution did not know of the book's relevance until Truax took the stand and testified. The book was then promptly disclosed by the prosecution as soon as its relevance was discovered. There is no evidence in this record of an intentional delay or bad faith by the government. Under these circumstances, the district court did not abuse its discretion in allowing the limited inquiries.

Even if the evidence should have been excluded, any error was harmless because it neither affected Truax's substantial rights nor had more than a slight influence on the verdict. See United States v. Eason, 829 F.3d 633, 638 (8th Cir. 2016). Attempted enticement of a minor requires that Truax knowingly use a means or facility of interstate or foreign commerce to persuade, induce, or entice an individual under age 18 to engage in sexual activity, knowing the individual was

under 18, and if the sexual activity had occurred, Truax could have been charged with a criminal offense under South Dakota law. See 18 U.S.C. § 2422(b). The uncontroverted evidence established that Truax used his cell phone to send Tinder and text messages to what he believed was an underage girl. Truax's presence in the vicinity of the pre-arranged meeting place, the graphic nature of the messages, and the items found in Truax's van, demonstrated that he intended to engage in sexual activity with a girl he understood to be 13 years old. Without the Spence Book evidence, there was abundant evidence from which the jury could conclude beyond a reasonable doubt that Truax committed the offense of attempted enticement of a minor using the internet.

Truax next argues the district court erred when it permitted the prosecutor to state during rebuttal closing argument that Truax's testimony was uncorroborated and not based on facts, and that his behavior while testifying was a "show" and "theatrics." Under plain error review, the burden rests on Truax to show there is a reasonable probability the outcome would have been different in the absence of the alleged error. United States v. Darden, 688 F.3d 382, 388 (8th Cir. 2012). Reversal is appropriate only if: "(1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." United States v. Herbst, 668 F.3d 580, 586 (8th Cir. 2012) (quotation omitted).

While a prosecutor may not express a personal opinion about a defendant's credibility, it is not improper for a prosecutor to suggest the jury should not believe a defendant's testimony, so long as the suggestion is based on evidence contrary to the defendant's testimony. See United States v. Jones, 865 F.2d 188, 191 (8th Cir. 1989) (noting it is permissible for a prosecutor to make arguments that fairly characterize uncontroverted evidence). Here, the prosecutor argued that Agent Gromer's testimony refuted Truax's claim that his conduct was an attempt to commit suicide by cop. That said, the prosecutor's florid language in the rebuttal argument presents a close question related to propriety. Even assuming the argument was improper, there is no reasonable probability that Truax would have been acquitted without the statements. Given the overwhelming evidence against Truax, he cannot

show the remarks were clearly injurious, or that prejudice resulted.  Moses v. Union Pacific R.R., 64 F.3d 413, 417 (8th Cir. 1995).

Finally, Truax challenges the substantive reasonableness of his sentence, which we review for abuse of discretion.  United States v. Staten, 990 F.3d 631, 636 (8th Cir. 2021).  After considering and weighing the § 3553(a) factors, the district court imposed a within-Guidelines sentence, which is presumed to be reasonable. See United States v. Deegan, 605 F.3d 625, 634 (8th Cir. 2010).  Truax believes the district court should have weighed the factors differently, but this type of disagreement is not a ground for reversal, particularly when, as here, the district court gave a "reasoned basis" for the sentence imposed.  United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009) (citations omitted).

III.　CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____